IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| GREAT AMERICAN INSURANCE COMPANY, | CIVIL NO. 24-00075 JAO-BMK |
| Plaintiff, | ORDER (1) GRANTING DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF |
| vs. | LAHAINA RESIDENTIAL CONDOMINIUM'S MOTION TO DISMISS OR, IN THE |
| ASSOCIATION OF APARTMENT OWNERS OF LAHAINA RESIDENTIAL CONDOMINIUM, et al., | ALTERNATIVE, TO STAY THIS PROCEEDING (ECF NO. 35); AND (2) DENYING AS MOOT PLAINTIFF GREAT AMERICAN INSURANCE COMPANY'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 30) |
| Defendants. | |

**ORDER (1) GRANTING DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF LAHAINA RESIDENTIAL CONDOMINIUM'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS PROCEEDING (ECF NO. 35); AND (2) DENYING AS MOOT PLAINTIFF GREAT AMERICAN INSURANCE COMPANY'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 30)**

This insurance dispute addresses whether a property damage exclusion bars coverage over an owner's claim that a condominium association and its property manager failed to obtain adequate insurance before the condominium's property was damaged in the wildfire that destroyed Lahaina in August 2023. Plaintiff Great American Insurance Company ("Plaintiff") seeks a declaration that it has no

duty to defend or indemnify Defendants Association of Apartment Owners of

Lahaina Residential Condominium (the "AOAO") and Quam Properties Hawaii,

Inc. ("Quam") in connection with a demand for mediation submitted to the AOAO

and Quam on behalf of one of the owners, and has filed a Motion for Judgment on

the Pleadings to that effect.  The AOAO has filed a competing motion, which

Quam joins, asking the Court to decline jurisdiction over this action and to dismiss

it because it presents a novel question under Hawaiʻi law, or alternatively to stay

the action.

For the following reasons, the Court GRANTS the AOAO's Motion,

DISMISSES this action, and DENIES Plaintiff's Motion for Judgment on the

Pleadings as MOOT.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff issued a Community Association Solution Insurance Policy

("Policy") that provides errors and omissions coverage to the AOAO and Quam, as

well as its officers and directors, for a policy period of March 13, 2023 to March

13, 2024.  ECF No. 1 ¶ 1; ECF No. 1-2.  The Policy excludes "any Claim made

against any Insured . . . based upon, arising out of, relating to, directly or indirectly

resulting from or in consequence of, or in any way involving . . . damage to or

destruction of any tangible property or the loss of use of any tangible property[.]"
ECF No. 1 ¶ 17.

The AOAO manages and operates the Lahaina Residential Condominium
development, which is located on Front Street, in Lahaina, Maui and was destroyed
by the wildfire that swept through Lahaina in August 2023. *See* ECF No. 35-1 at
7; *see also generally Association of Apartment Owners of Lahaina Residential
Condominium v. Hawaiian Electric Industries, Inc., et al.*, Case No. 23-cv-00518-
JAO-BMK, Dkt. No. 1-1 (D. Haw. Dec. 5, 2023).

On October 6, 2023, counsel for some of the owners submitted a demand
(the "Demand") to counsel for the AOAO stating, in part:

> My clients are very concerned that the AOAO is <u>extremely</u>
> underinsured. Based on the February 23, 2023, insurance
> summary I have reviewed, the replacement cost limits are only
> 10 million dollars when it is likely to cost at least double that to
> replace the structures that were lost in the August 2023 fire.
>
> I understand the association might be pursuing efforts against
> HECO and others. While obviously that avenue should be
> pursued, that outcome is far from certain, and it may take years
> for even a partial recovery due to the massive number of
> claimants, potential bankruptcies etc.
>
> Those significant risks and lengthy delays should be an insurer's
> problem in a subrogation claim, not the homeowners' problem.
>
> Under both [Hawai'i Revised Statutes ("HRS") §] 514B-143 and
> the governing documents, homeowners were entitled to the peace

3

of mind of full replacement coverage.[1]   Unfortunately, the coverage is woefully inadequate.

Does the board intend on pursuing this matter against Insurance Associates, Quam (I understand it was the property manager in February 2023) and individual board members?

I fully understand that mistakes can be made.  This unfortunately was a very large one, with devastating effects for the homeowners.  Obviously, it is for situations like this that D&O, E&O and Umbrella policies exist.

Please let me know within seven days if the board is going to pursue this matter with the above entities and individuals.

Unless an affirmative unequivocal written response is received, we hereby demand mediation pursuant to HRS [§] 514B-161[2.]

ECF No. 24-2 at 2–3.

The AOAO timely tendered the Demand to Plaintiff for coverage under the Policy.  ECF No. 24-1 ¶ 11.  Plaintiff denied coverage, noting the Demand was not a "Claim" under the Policy and also citing the property damage exclusion copied above.  ECF No. 24-4.  The AOAO responded shortly thereafter, demanding that Plaintiff retain defense counsel for the AOAO in connection with the upcoming

---

[1]  *See* HRS § 514B-143(a)(1)(C) ("Unless otherwise provided in the declaration or bylaws, the association shall purchase and at all times maintain" property insurance "[i]n a total amount of not less than the full insurable replacement cost of the insured property, less deductibles, but including coverage for the increased costs of construction due to building code requirements, at the time the insurance is purchased and at each renewal date").

[2]  *See* HRS § 514B-161 (providing for mediation of a dispute between an owner and the board, which may be mandatory depending on the circumstances).

4

mediation with the owners.  ECF No. 24-5.  Plaintiff again responded by letter, indicating that it had no duty to defend or indemnify the AOAO in connection with the Demand, again based on the property damage exclusion, but agreeing to reimburse the Costs of Defense incurred in connection with the mediation under a reservation of rights, including the right to file this action.  ECF No. 24-6.  A mediation occurred with counsel for the owners in February 2024; no resolution has been reached, no further mediation has been scheduled, and no owner has filed suit against the AOAO or Quam.  *See* ECF No. 35-1 at 9; ECF No. 40-1 ¶¶ 3–6.

## B.    Procedural Background

Just over a week before that mediation, and pursuant to its reservation of rights, Plaintiff initiated this action against the AOAO and Quam seeking a declaration that it has no duty to defend or indemnify either the AOAO or Quam in connection with the Demand based on the terms of the Policy.  ECF No. 1.  The AOAO filed a Counterclaim, seeking a declaration that Plaintiff must defend and indemnify the AOAO in connection with claims set forth in the Demand.  ECF No. 24-1.  Quam filed Crossclaims against the AOAO for: (1) Indemnity; (2) Equitable Indemnity; (3) Breach of Express Indemnity; (4) Breach of Contract; (5) Breach of Express and/or Implied Warranty; (6) Recovery of Attorneys' Fees, Costs, and Cost of Defense; and (7) Reservation of Rights to Amend.  ECF No. 23-1.

5

Plaintiff filed a Motion for Judgment on the Pleadings, which the AOAO and Quam oppose.  ECF Nos. 30, 41, 42, 43.  The AOAO has, in turn, filed a motion asking the Court to decline to exercise jurisdiction over this action, and so dismiss it, because it raises unsettled questions of state law, or alternatively to stay the action.  ECF No. 35 (the "AOAO's Motion"); ECF No. 44.  Quam substantively joins in the AOAO's Motion.  ECF No. 36.  Plaintiff opposes it. ECF No. 40.  The Court held a hearing on the AOAO's Motion and Plaintiff's Motion for Judgment on the Pleadings on August 15, 2024.  ECF No. 46.  After the hearing, the Court permitted the parties to submit supplemental briefing on issues that arose during the hearing.  ECF Nos. 46, 48, 49.

## II.     LEGAL STANDARD

Pursuant to the Declaratory Judgment Act, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration" provided the lawsuit presents an actual case or controversy.  *See* 28 U.S.C. § 2201(a); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222–23 (9th Cir. 1998) (en banc).  A district court is under no compulsion to exercise jurisdiction pursuant to the Declaratory Judgment Act.  *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).  Instead, a district court has discretion to dismiss or stay the federal action where the case involves solely declaratory relief pursuant to the Declaratory Judgment Act.  *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

"In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.*

A district court should not decline jurisdiction, however, when there are independent claims seeking monetary relief that have been joined with an action for declaratory relief. *See United Nat'l Ins. Co. v. R & D Latex Corp.*, 242 F.3d 1102, 1112–13 (9th Cir. 2001). In addition, the question of discretionary jurisdiction only arises if subject matter exists in the first place, i.e., based on diversity of citizenship or federal question jurisdiction. *See id.* at 1107.

### III.    DISCUSSION

### A.    The AOAO's Motion

#### 1.    Preliminary Matters Regarding Discretionary Jurisdiction

First, the Court notes that it has subject matter jurisdiction over this action based on diversity. *See* ECF Nos. 9, 11, 12. And that, given the Demand and corresponding mediation, where Plaintiff has already advanced the costs of defense, this declaratory action presents a ripe case and controversy.

Next, as noted above, district courts should not dismiss a claim for declaratory relief when the declaratory action joins other claims (e.g., bad faith, breach of contract, breach of fiduciary duty, or other claims for monetary relief). *See R&D Latex*, 242 F.3d at 1112. "If a federal court is required to determine

major issues of state law because of the existence of non-discretionary claims, the declaratory action should be retained to avoid piecemeal litigation." *Dizol*, 133 F.3d at 1225–26.  Thus, the Court must first ascertain "whether there are claims in the case that exist independent of any request for purely declaratory relief, that is, claims that would continue to exist if the request for a declaration simply dropped from the case." *Snodgrass v. Provident Life & Acc. Ins. Co.*, 147 F.3d 1163, 1167– 68 (9th Cir. 1998).

Here, both Plaintiff's claims and the AOAO's counterclaim seek only declaratory relief regarding whether Plaintiff has a duty to defend or indemnify the AOAO and Quam in connection with the Demand.  *See* ECF No. 1; ECF No. 24-1. Although Quam has filed certain crossclaims against the AOAO that are not limited to a request for declaratory relief, *see* ECF No. 23-1, if Plaintiff and the AOAO's claims for declaratory relief "simply dropped from the case," *Snodgrass*, 147 F.3d at 1167–68, the Court would not have jurisdiction over Quam's claims against the AOAO.  *See* ECF No. 11-1 (indicating the AOAO and Quam are both citizens of Hawaiʻi, meaning diversity jurisdiction over Quam's claims, all arising under state law, would be lacking); *see also R&D Latex*, 242 F.3d at 1113 (noting the proper analysis is "whether the claim for monetary relief is independent in the sense that it could be litigated in federal court even if no declaratory claim had been filed" meaning "the district court should consider whether it has subject

8

matter jurisdiction over the monetary claim alone, and if so, whether that claim must be joined with one for declaratory relief").

Finally, the Court agrees with the AOAO that the fact that it filed a counterclaim against Plaintiff does not disqualify it from seeking dismissal on the grounds that it has here. *See* ECF No. 44 at 5–6 (citing *Argonaut Ins. Co. v. St. Francis Med. Ctr.*, 17 F.4th 1276, 1281–84 (9th Cir. 2021)). Again, the AOAO's Counterclaim seeks only declaratory relief. *See* ECF No. 24-1. And it makes no mention of jurisdiction. *See id*. In its Answer, filed with the Counterclaim, the AOAO objected to jurisdiction as "discretionary and, in this case, inappropriate" while explicitly asking the Court to decline to exercise discretionary jurisdiction. *See* ECF No. 24 ¶¶ 9, 18 & p. 6. The AOAO then promptly sought dismissal on those same grounds only a few weeks after filing its Answer and Counterclaim. *See* ECF No. 35. Even before doing so, the AOAO consistently expressed its intent to seek dismissal based on the Court's discretionary jurisdiction. *See* ECF No. 44 at 8–9 (noting position stated in Rule 16 Scheduling Conference Statement and at Rule 16 Scheduling Conference). The Court thus detects no gamesmanship on this front. And jurisdiction here remains discretionary. *See Argonaut*, 17 F.4th at 1281–84.

## 2.    Analyzing Discretionary Jurisdiction Under *Brillhart*

The Declaratory Judgment Act, codified at 28 U.S.C. § 2201(a), provides in

relevant part:

> any court of the United States, upon the filing of an appropriate
> pleading, *may* declare the rights and other legal relations of any
> interested party seeking such declaration, whether or not further
> relief is or could be sought.  Any such declaration shall have the
> force and effect of a final judgment or decree and shall be
> reviewable as such.

28 U.S.C. § 2201(a) (emphasis added).  The Court has the discretion "to determine

whether it is 'appropriate' to grant jurisdiction in a declaratory relief action based

in diversity."  *Gov't Emps. Ins. Co. v. Dizol*, 176 F. Supp. 2d 1005, 1017 (D. Haw.

2001) (citing *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288–89 (1995)) (other

citation omitted); *see also Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800,

803 (9th Cir. 2002) ("[T]he decision whether to exercise jurisdiction over a

declaratory action lies in the sound discretion of the district court.").  "[T]here is

no presumption in favor of abstention in declaratory actions generally, nor in

insurance coverage cases specifically."  *Dizol*, 133 F.3d at 1225; *Huth*, 298 F.3d at

803.  And insurers are not "barred from invoking diversity jurisdiction to bring a

declaratory judgment action against an insured on an issue of coverage."  *Dizol*,

133 F.3d at 1225 (quoting *Aetna Cas. & Sur. Co. v. Merritt*, 974 F.2d 1196, 1199

(9th Cir. 1992)).

10

The Court's discretion is governed by the factors enumerated in *Brillhart v.*
*Excess Insurance Co. of America*, 316 U.S. 491 (1942):  (1) avoidance of needless
determination of state law issues; (2) discouragement of the filing of declaratory
actions as a means of forum shopping; and (3) avoidance of duplicative litigation.
*See Dizol*, 133 F.3d at 1225.  The Ninth Circuit additionally considers whether
there is a parallel state proceeding.  *See id.*; *Phoenix Assurance PLC v. Marimed*
*Found. for Island Health Care Training*, 125 F. Supp. 2d 1214, 1219–20 (D. Haw.
2000).  The Court addresses these factors in turn.

### a.    Needless Determination Of State Law

Needless determination of state law may occur when: (i) there are parallel
state proceedings involving precise state law issues; (ii) Congress expressly
reserved the area of law for the states; and (iii) there is no compelling federal
interest, e.g., diversity jurisdiction.  *See Cont'l Cas. Co. v. Robsac Indus.*, 947 F.2d
1367, 1371 (9th Cir. 1991), *overruled on other grounds by Dizol*, 133 F.3d 1220.
This factor "alone may support remand."  *R.R. St. & Co. Inc. v. Transp. Ins. Co.*,
656 F.3d 966, 975 (9th Cir. 2011) (quoting *Huth*, 298 F.3d at 802–04).

### i.    Parallel State Proceeding

When a parallel state proceeding involving the same issues and parties exists
at the time the federal declaratory judgment action is filed, there is a presumption
that the declaratory action should be heard in state court.  *See Dizol*, 133 F.3d at

1225.  This is because it would ordinarily "be uneconomical as well as vexatious

for a federal court to proceed in a declaratory judgment suit where another suit is

pending in a state court presenting the same issues, not governed by federal laws,

between the same parties."  *Brillhart*, 316 U.S. at 495.

Construing "parallel actions" liberally, the Ninth Circuit has held that state

actions need not involve the same parties or the same issues to be parallel.  "It is

enough that the state proceedings arise from the same factual circumstances."

*Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 754–55 (9th Cir. 1996),

(citing *Am. Nat'l Fire Ins. Co. v. Hungerford*, 53 F.3d 1012, 1017 (9th Cir. 1995),

*overruled on other grounds by Dizol*, 133 F.3d 1220)), *overruled on other grounds

by Dizol*, 133 F.3d 1220.  "Courts have regularly found parallel proceedings when

an insurance company files a complaint for declaratory relief in federal court

seeking determinations as to its obligations for insurance coverage concerning

underlying state proceedings."  *Massachusetts Bay Ins. Co. v. Arcadia

Architectural Prod., Inc.*, 2021 WL 311008, at *7 (D. Haw. Jan. 29, 2021).

The parties dispute whether there is a parallel state proceeding here.  The

AOAO contends the mediation underway pursuant to HRS §514B-161 qualifies as

a parallel proceeding, particularly because it is "expected" to ripen into a state

court lawsuit "if the dispute cannot be resolved."  *See, e.g.*, ECF No. 35-1 at 14–

15.  Plaintiff, however, objects that the AOAO has not cited any authority to

support its contention that a non-binding mediation qualifies as a parallel proceeding under *Brillhart*—and further that it is pure conjecture whether the owners will ever file a state court lawsuit.  *See* ECF No. 40 at 16–17.

On the one hand, Plaintiff is correct that the AOAO fails to cite any case indicating that a mediation that *could* devolve into a lawsuit is a parallel proceeding.  That said, when balancing comity concerns—as the Court must in this analysis[3]—it is significant that the mediation here was demanded pursuant to Hawaii's detailed statutory scheme addressing condominium management, and specifically a provision designed to avoid litigation.  *See* HRS § 514B-161; *cf.* ECF No. 24-5 at 2 (counsel for AOAO claiming in its letter to Plaintiff demanding coverage that "[m]ediation is a prerequisite to filing suit").  Elsewhere, Plaintiff suggests the dispute between the parties is ripe *now* because there was a mediation for which Plaintiff has already been advancing the "Costs of Defense" (subject to a reservation of rights).  *See* ECF No. 43 at 8 & n.5; *see also* ECF No. 40 at 26; ECF No. 24-6.  The Court therefore cannot help but wonder if Plaintiff is attempting to have it both ways—complaining that it is paying for the mediation and so needs a ruling now, while complaining that the mediation, demanded pursuant to a state regulatory scheme as a first step to avoid litigation, may not count as a parallel proceeding in the *Brillhart* analysis.

---

[3]  *See Dizol*, 133 F.3d at 1226.

The  AOAO also initiated its own proceeding regarding property damage from the fire—which Plaintiff contends the underlying Demand *arises out of*—that remains pending in state court on Maui.  *See Association of Apartment Owners of Lahaina Residential Condominium v. Hawaiian Electric Industries, Inc., et al.*, Case No. 23-cv-00518-JAO-BMK, Dkt. No. 6 (D. Haw. March 14, 2024) (remanding case to the Circuit Court of the Second Circuit, State of Hawaiʻi, where it remains pending as Case No. 2CCV-23-0000313).  At the hearing, Plaintiff's counsel argued that the AOAO's suit is not a parallel proceeding because it would not resolve any questions overlapping with the coverage questions at issue here. But the Ninth Circuit's definition of a parallel proceeding for purposes of the *Brillhart* analysis is not so narrow.  Recently, the Ninth Circuit has reiterated that "if the proceedings share the same factual predicates and the issues depend on state law, the state court is the more suitable forum for a petitioner to bring a related claim, and the district court [does] not abuse its discretion by declining jurisdiction."  *Argonaut*, 17 F.4th at 1284–85 (internal quotation and citation omitted).  According to Plaintiff's own theory of this case, the AOAO's state court suit against utility companies and others arising out of property damage resulting from the fire "share[s] the same factual predicates," *id.*, as this coverage dispute, meaning state court would be a better forum for this related claim.  *See id.*; *see also Massachusetts Bay*, 2021 WL 311008, at *7 ("Actions are considered 'parallel

proceedings' when an ongoing state proceeding involves a state law issue that is predicated on the same factual transaction or occurrence involved in a matter pending before a federal court.").

Yet, even if the Court were to assume no parallel proceeding exists here, "[t]he pendency of a state court action does not, of itself, require a district court to refuse federal declaratory relief[.]" *Dizol*, 133 F.3d at 1225. Nor does the absence of a parallel state proceeding involving the same issues and parties require a court to exercise its discretionary jurisdiction under the Declaratory Judgment Act. *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Simpson Mfg. Co.*, 829 F. Supp. 2d 914, 925 (D. Haw. 2011). In short, the AOAO may not have shown that a presumption in favor of hearing this matter in state court exists. But that does not prevent the Court from ultimately concluding that state court still provides the better forum based on consideration of other factors. So the Court turns to those other factors now.

### ii.   Area Of Law Reserved For The States

The dispute in this declaratory judgment action—solely implicating insurance law—concerns an area of law expressly left to the States by Congress through the McCarran-Ferguson Act. *See Robsac*, 947 F.2d at 1371 (citing 15 U.S.C. §§ 1011–12 (1988)). Courts abstain from hearing declaratory judgment actions for the construction of insurance policies when "unresolved state law issues

15

are present in a field of law where the state has shown its interest by significant legislative activity and administrative regulation." *Smith v. State Farm Ins. Co.*, 615 F. Supp. 453, 455 (D. Haw. 1985). This is because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulations." *Emps. Reinsurance Corp. v. Karussos*, 65 F.3d 796, 799 (9th Cir. 1995), *overruled on other grounds by Dizol*, 133 F.3d 1220 (alteration in original) (citation omitted).

In assessing whether the exercise of jurisdiction over a declaratory judgment action involves a needless determination of state law, courts focus on "unsettled issues of state law, not fact-finding in the specific case." *Allstate Ins. Co. v. Davis*, 430 F. Supp. 2d 1112, 1120 (D. Haw. 2006) (citation omitted); *see also Hartford Underwriters Ins. Co. v. Masters*, 2011 WL 2173779, at *9 (D. Haw. June 2, 2011) ("Thus, the court assesses not merely whether the action raises a state law issue (which is the case for almost all diversity actions), but rather whether it presents an *unsettled* issue of state law."). "When state law is unclear, '[a]bsent a strong countervailing federal interest, the federal court should not elbow its way . . . to render what may be an "uncertain" and "ephemeral" interpretation of state law.'" *Davis*, 430 F. Supp. 2d at 1120 (alteration in original) (citation omitted).

16

When assessing the extent to which this case presents unsettled questions under Hawaiʻi law, the Court found it helpful to review the briefing on the AOAO's Motion and Plaintiff's Motion for Judgment on the Pleadings.  While Plaintiff notes, in opposing the AOAO's Motion, that Hawaiʻi law is settled when it comes to defining or interpreting the phrases at issue here *in isolation* (e.g., "arising out of" or "damage" or "destruction of tangible property"), *see, e.g.*, ECF No. 40 at 20–23, it concedes in the context of its own motion that no case has analyzed the precise question regarding how that policy language fits together to impact coverage here under Hawaiʻi law, *see* ECF No. 43 at 11.

Without wading too much into the merits, the Court views the coverage question here as:

> Does a demand from an owner complaining about an AOAO being underinsured originate from, have its origin in, grow out of, flow from, or in any way involve property damage when
> > (a) the demand accuses the AOAO of violating HRS § 514B-143 and the governing documents before any property damage occurred;
> > (b) the demand references how that violation harmed owners in light of the specific property damage caused by a fire—but also references harm that may be interpreted to predate the fire and property damage, e.g., in the form of the violations themselves; and
> > (c) where the AOAO's alleged violation of HRS § 514B-143 and governing documents did not itself cause or contribute to the fire or resulting property damage.

Surveying the authority the parties rely on, and based on its own additional

research, the Court finds no settled answer to this precise question under Hawaiʻi

law—including some of the more general questions underpinning that question.

On the one hand, Plaintiff may be correct that, because the exclusion's

"arising out of" and "in any way involving" language is interpreted broadly, the

property damage exclusion applies.  More specifically, it is undisputed that the

Demand was made only *after* property damage occurred from the fire, and that

property damage impacts the extent of the owners' harm resulting from the

AOAO's and Quam's alleged mistakes before the fire.  *See, e.g.*, ECF No. 30 at 23

(discussing, e.g., *Parc Condo. Ass'n v. Travelers Cas. & Sur. Co. of Am.*, 2016 WL

5172513, at *3–4 (S.D. Tex. Mar. 31, 2016) (concluding claim regarding an

association's failure to properly insure units before a hurricane and the

consequences of that underinsurance in the wake of the hurricane arose out of that

property damage and was therefore excluded)).

On the other hand, the AOAO may be correct that potential liability existed

based on violations of HRS § 514B-143 and breach of the governing documents

from the moment the property was underinsured.  And that, because that potential

liability (and harm to owners) existed separate and independent from the additional

harm from the physical property damage caused by the fire, the property damage

exclusion would not bar all coverage here.  *See, e.g.*, ECF No. 41 at 15–16, 20–25

18

& n.9 (discussing, e.g., *Admiral Ins. Co. v. Briggs*, 264 F. Supp. 2d 460, 462–63

(N.D. Tex. 2003); *Willbros RPI, Inc. v. Cont'l Cas. Co.*, 601 F.3d 306, 310–11 (5th

Cir. 2010); *Landing Council of Co-Owners v. Fed. Ins. Co.*, 2013 WL 4787954, at

*7–8 (S.D. Tex. Sept. 9, 2013); and *Landing Council of Co-Owners v. Fed. Ins.

Co.*, 247 F. Supp. 3d 802, 811 (S.D. Tex. 2017)).

Given the intersection of the AOAO's alleged conduct in failing to obtain

adequate insurance and the property damage that occurred later, it bears noting that

courts applying California law—which Plaintiff contends is what a Hawai'i court

would look to here[4]—have stated that coverage may exist despite a broad

exclusion if the allegations in the underlying action (here, the failure to obtain

adequate insurance) would stand even absent the object of the exclusion (here, the

---

[4] As Plaintiff correctly notes, *federal* courts often say that Hawai'i courts look to
California law when deciding issues of first impression, and examples supporting
this contention certainly exist. *See* ECF No. 30 at 19 n.9 (citing cases). But
examples also exist where Hawai'i courts have *not* followed California law. *See,
e.g., SCI Mgmt. Corp. v. Sims*, 101 Hawai'i 438, 452–53, 456–57, 71 P.3d 389,
403–04, 407–08 (2003) (majority following Massachusetts law despite dissent's
commentary they should have followed California law). Hawai'i courts have also
looked to jurisdictions other than California when those jurisdictions have
addressed highly analogous scenarios. *See, e.g., Kaiama v. AIG Hawai'i Ins. Co.*,
84 Haw. 133, 136–37, 930 P.2d 1352, 1355–56 (1997) (Washington); *Kauai Police
Comm'n ex rel. Iona v. Carvalho*, 138 Hawai'i 287, 297, 378 P.3d 1003, 1013 (Ct.
App. 2016), *as corrected* (July 1, 2016) (New Jersey and Massachusetts). So in
the context of *Brillhart*, it certainly seems better for Hawai'i courts to survey other
jurisdictions on these issues—rather than have this Court proclaim that California
law is the be all end all. In any event, as Plaintiff concedes, "there is no . . .
California case . . . directly on point." ECF No. 43 at 11.

property damage).  *See Domokos v. Scottsdale Ins. Co.*, 2020 WL 4016811, at *7–
9 (N.D. Cal. July 16, 2020) (concluding, based on its review of courts applying
California law, that the "relevant question" as to whether that policy's contract
exclusion applied was whether "the allegations in the Underlying Action . . . would
stand absent the contract" where the focus is on the facts alleged and conduct
complained about rather than any legal theory regarding recovery).  As a matter of
Hawaiʻi law, it certainly seems possible that the owners could state a claim against
the AOAO even absent property damage.[5]  But as to whether the Demand here did
so, given it *also* mentions the fire, the parties again retreat to the competing case
law cited above.

 The Court also finds the parties' briefing on the question of concurrent or
independent causation undeveloped, further risking federal court entanglement
with this issue that may impact wildfire litigation in Hawaiʻi more broadly.  *See*

---

[5]  *See* HRS § 514B-157(b) (providing that, if "any claim by an owner is
substantiated in any action against an association . . . to enforce any provision of
the declaration, bylaws, house rules, or this chapter," the owner may recover the
costs, expenses, and fees incurred); *Malabe v. Ass'n of Apartment Owners of Exec.
Ctr. by & through Bd. of Directors*, 147 Hawaiʻi 330, 356, 465 P.3d 777, 803
(2020), as corrected (June 18, 2020) ("This Court previously recognized that a
condominium's governing documents are contractual obligations between the
condominium association and a condominium owner."); *see also Chuck Jones &
MacLaren v. Williams*, 101 Hawaiʻi 486, 500, 71 P.3d 437, 451 (App. 2003) ("in
the absence of proof of substantial damages, a breach of contract action need not
be dismissed, but nominal damages may be awarded, upon which costs can be
assessed") (citing *Ferreira v. Honolulu Star–Bulletin, Ltd.*, 44 Haw. 567, 580, 356
P.2d 651, 658 (1960)).

ECF No. 41 at 20–21 (citing Fifth Circuit and Texas authority indicating that,

where a covered event and excluded event each independently cause the third

party's injury, coverage exists despite the exclusion).  The parties seem to suggest

this is a "Texas-only" doctrine.  *See* ECF No. 43 at 18.  But courts applying

California law have also recognized that multiple causes can still result in coverage

so long as *one* cause is covered (i.e., the AOAO's alleged mistakes), even if

*another* cause is excluded (i.e., the fire and resulting property damage).  *See*

*Conestoga Servs. Corp. v. Exec. Risk Indem., Inc.*, 312 F.3d 976, 982–83 (9th Cir.

2002) (addressing doctrine of concurrent causation under California law ).

    In *Conestoga*,[6] for example, the insured—like the AOAO—sought coverage

under an errors and omissions policy that excluded claims "arising out of"

bankruptcy.  *Id.* at 978.  In the underlying suit for which it sought coverage, the

insured (Conestoga—itself an insurance brokerage) was accused of malpractice by

a client (Frontier) for failing to timely send a document for final execution to a

government agency that resulted in Frontier (as the surety on a bond) having to pay

more money when the principal on the bond (Standard) filed for bankruptcy and

defaulted.  *See id.* at 979.  Frontier contended that it would have been obligated to

---

[6] No party cited *Conestoga* in their briefing.  Because the Court uncovered
*Conestoga* through its own research, it directed the parties to be prepared to
address it at the hearing.  ECF No. 45.

pay less if Conestoga had submitted the document on time.  *See id.*  The Ninth

Circuit noted, similar to how the parties frame the issue here, that:

> The question, then, as Conestoga points out, boils down to one
> of proximate cause: At some point back in the causal chain, the
> Frontier claim did "directly or indirectly arise out of or result
> from" Standard's bankruptcy, but it also arose out of/resulted
> from Conestoga's botched handling of the [document].

*Id.* at 982.  So too here with the fire damage and the alleged botched insurance

coverage.  Looking to California law, the Ninth Circuit ultimately concluded

coverage existed, reasoning:

> [T]he Frontier suit was a malpractice suit against
> Conestoga, where Frontier was seeking damages equal to the
> difference between the amount it would have owed on the bond
> if Conestoga had forwarded the Rider properly and the amount it
> owed under the terms of the surety agreement *without* the
> Rider.[7]  It is not as if, for example, Frontier were suing
> Conestoga on the grounds that the Standard surety bond was a
> poor risk, or *because* Standard went bankrupt. *See, e.g.,*
> *Transamerica Ins. Co. v. South*, 975 F.2d 321, 328–29 (7th Cir.
> 1992) (malpractice plaintiff suing insurance broker on grounds
> that broker had placed coverage with an insurer who turned out
> to be insolvent).
>
> Put another way, there were at least two "causes" for the
> Frontier suit:  Standard's bankruptcy and Conestoga's
> malpractice.  Although Standard's bankruptcy was a necessary
> predicate to the suit, because without it there would have been
> no default for Frontier to cover, the malpractice is, at a minimum,

---

[7]  The AOAO suggests something similar here regarding the damages the owners
could recover, i.e., the difference between the insurance the AOAO secured in
March 2023 and what adequate insurance at that time would have been—rather
than the cost to rebuild now (vs. March 2023) in light of the Lahaina fire's total
effect on that cost.  *See* ECF No. 41 at 17 n.7.

> *a* proximate cause.  Therefore, under California law . . . the suit
> must be covered by Conestoga's liability insurance policy.

*Id.* at 983; *see also Zurich Specialties London Ltd. v. Bickerstaff, Whatley, Ryan & Burkhalter, Inc.*, 650 F. Supp. 2d 1064, 1072–73 (C.D. Cal. 2009), *aff'd*, 425 F. App'x 554 (9th Cir. 2011) ("[I]n *Conestoga*, Conestoga had nothing to do with the bankruptcy, and although the bankruptcy was a necessary predicate to the suit, because without it there would have been no default for Frontier to cover, aside from that there was no connection between Conestoga's alleged malpractice and the bankruptcy.  Therefore, these two factors were independent causes of the lawsuit.") (internal quotations and citation omitted).[8]

At the hearing, Plaintiff's main response to *Conestoga* was to direct the Court to another case, which had not been raised in any of the six briefs, but which Plaintiff claimed addressed and resolved the question of how causation impacts coverage under Hawai'i law, and thus here.  *See Allstate Ins. Co. v. Miller*, 732 F. Supp. 2d 1128 (D. Haw. 2010).  After taking more time to read *Miller* and review the parties' supplemental briefs on it, the Court is not persuaded it adds much.

---

[8]  Looking to *Conestoga* for the answer here assumes, of course, that a Hawai'i court would look solely to California law.  If it did not, it bears noting that other states may reject this doctrine in some instances. *See Krempl v. Unigard Sec. Ins. Co.*, 69 Wash. App. 703, 706, 850 P.2d 533, 535 (App. 1993) ("We conclude, however, that when an exclusion uses the phrase 'arising out of,' the joint causation rule is inapplicable in Washington.").

In *Miller*, the district court concluded, under Hawaiʻi law, that a motor vehicle exclusion barred coverage over a third-party suit brought against an insured who knowingly provided alcohol to minors, two of whom were then killed after a third got into an accident while driving them in a vehicle. *Id.* at 1130–31. The insured could not avoid the exclusion under the theory of concurrent causation because, without the excluded instrumentality (the motor vehicle), the minors would not have died and there could not have been an underlying lawsuit: "[the insured's] alleged provision of alcohol could not have independently caused the [minors'] deaths. Without the underlying motor vehicle accident, there would have been no injury and no basis for the Underlying Lawsuit." *Id.* at 1139.

But this reasoning just brings the Court back to its previous point: this causation doctrine's application here is less certain given that the failure to obtain adequate insurance *could* be an independent violation of Hawaiʻi law *regardless* of any underlying property damage (and thus, a covered claim)—while admittedly acknowledging that, here, that failure was only raised *after* property damage *had occurred*. Yet still, as compared to *Miller* where the other cause in the chain of events (supplying alcohol to minors) was *also* excluded, Plaintiff here has not argued that the other cause here (the AOAO's alleged poor decision making in obtaining coverage) is otherwise excluded. *See id.* at 1139 (noting the concurrent causation question in *Miller* was ultimately "moot" because, even assuming

24

multiple independent causes, providing alcohol to minors was *also* excluded as an intentional or criminal act). And *Miller* does not convince this Court that a Hawai'i court would never follow the reasoning of a case like *Conestoga*.

None of this is meant to suggest any outcome on the underlying merits here—only to illustrate why that outcome is not so clear.[9] Of course, "[t]his district regularly interprets insurance policies under Hawai'i law to determine an insurer's obligation(s) to its insured." *Nautilus Ins. Co. v. RMB Enterprises, Inc.*, 497 F. Supp. 3d 936, 951 (D. Haw. 2020) (noting there, however, that the matters before the Court did "not concern unsettled issues of state law"). But the broader context here has more significance than it does in many other cases. That context involves thorny coverage questions related to a fire that caused unprecedented death and destruction on Maui, where the majority of resulting lawsuits remain pending in state court on Maui. Because the answer to the coverage question is not settled under Hawai'i law and could have immediate ramifications on numerous

---

[9] That Plaintiff's supplemental brief string cites nearly a dozen other cases—beyond the two it was granted leave to address—would seem to further prove this point. *See* ECF No. 48 at 6 nn. 1 & 2. The Court declines to address the import (if any) of those cases given the AOAO had no chance to respond to them, and given it is declining to reach the merits of the coverage issue.

other insurance coverage disputes related to the fire,[10] it is one better resolved by

Hawai'i courts, without federal court entanglement.

In all, the Court finds this factor weighs in favor of dismissal.

### iii.   Absence Of Compelling Federal Interest

Finally, there is no compelling federal interest.  Where, as here, "the sole

basis of jurisdiction is diversity of citizenship, the federal interest is at its nadir."

*Robsac*, 947 F.2d at 1371.

Balancing the three foregoing considerations (regarding the existence of

parallel proceedings, unsettled questions of state law, and federal interests), the

Court finds that the first *Brillhart* factor weighs in favor of dismissal.

### b.   Forum Shopping

The second *Brillhart* factor is neutral.  Because diversity jurisdiction

provides a basis to bring suit in federal court, Plaintiff did not engage in forum

shopping by filing suit here.  *See First State Ins. Co. v. Callan Assocs., Inc.*, 113

F.3d 161, 162 (9th Cir. 1997) ("Although occasionally stigmatized as 'forum

shopping,' the desire for a federal forum is assured by the constitutional provision

for diversity jurisdiction and the congressional statute implementing Article III.").

---

[10]  At the hearing, counsel for the AOAO confirmed he represents other
condominium associations currently in mediation over similar allegations that they
were underinsured.

26

The AOAO concedes as much. *See* ECF No. 35-1 at 21. The Court therefore finds this factor neutral. *See Huth*, 298 F.3d at 804.

### c.   Duplicative Litigation

The parties dispute how the third *Brillhart* factor—avoidance of duplicative litigation—applies here. The AOAO contends this factor weighs in favor of dismissal (or alternatively a stay) because, if the Demand ripens into a lawsuit, another coverage dispute may arise between these parties based on the likely more fulsome allegations in that complaint. *See* ECF No. 35-1 at 21. Plaintiff objects, again, that the Court should not rely on speculation regarding a future lawsuit when there is a ripe controversy regarding Plaintiff's duty to defend or indemnify in connection with the Demand and mediation. *See* ECF No. 40 at 26. Plaintiff also argues that any ruling regarding the AOAO and Quam's underlying liability regarding inadequate insurance is irrelevant to a determination regarding Plaintiff's duty to defend or indemnify. *See id.* at 27. On the whole, the Court concludes this factor tips slightly in favor of dismissal.

On the one hand, this finite dispute concerning Plaintiff's obligations under the Policy with regard to the Demand will be entirely disposed of in either federal court (if the Court maintains jurisdiction) or state court (if it does not, and Plaintiff refiles in state court)—which might suggest this factor is neutral here. *See Huth*, 298 F.3d at 803–04. That said, there is certainly some risk of duplicative litigation

and inconsistent results should the Court opt to maintain jurisdiction over this case and the mediation ripens into a state court lawsuit.  For example, depending on the precise allegations raised in a lawsuit and if, e.g., individual officers are also named as defendants, there is the risk that another coverage dispute could arise—in either federal or state court—that could result in inconsistent rulings on coverage questions overlapping with those presented here.

The Court is also not convinced by Plaintiff's argument that there can be no risk of duplicative litigation because a court analyzing a coverage dispute need not make ultimate findings on liability and is confined to the allegations in an underlying claim rather than its merits.  *See* ECF No. 40 at 27.  Based on the discussion above, it is not clear to the Court that it would *not* be required to address similar issues to those that may be presented in a lawsuit against the AOAO and Quam.  *See Massachusetts Bay*, 2021 WL 311008, at *9 ("Duplicative litigation may be a concern if determining the insurance company's duties would require the determination of issues that the state court will address in the underlying actions.").  For example, if a state court were to determine that an owner could state at least one claim against the AOAO and Quam *without* proof of any property damage, that could impact the coverage determination as potentially framed above.

For this reason, the Court is not persuaded by Plaintiff's reliance on *Nautilus*, where this Court determined—at the summary judgment phase

nonetheless—that "because the coverage issues presented in th[at] litigation *w[ould] not affect the underlying action*, *nor lead to inconsistent results*, the *Brillhart* factors weigh[ed] in favor of exercising jurisdiction."  497 F. Supp. 3d at 951 (emphasis added).

Based on the foregoing, the Court concludes that the *Brillhart* factors weigh in favor of remand because, even assuming no parallel state action or accepting that the risk of duplicative proceedings remains speculative at this point, the needless determination of state law factor still weighs strongly in favor of dismissal.  *See Huth*, 298 F.3d at 802–04 (affirming the remand of a declaratory judgment action to avoid needless determination of state law issues even without a similar state court proceeding and even though "there [was] no great need for state court resolution of an open question of state law in [that] case").

### d.    Other Factors

In addition to the *Brillhart* factors, the Court may address the following considerations:

> whether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems.  In addition, the district court might also consider the convenience of the parties, and the availability and relative convenience of other remedies.

29

*Dizol*, 133 F.3d at 1225 n.5 (citation omitted).  Notwithstanding these factors, the

"three *Brillhart* factors remain the philosophic touchstone" for the abstention

analysis.  *R.R. St.*, 656 F.3d at 975 (internal quotations and citation omitted).

      The Court is not persuaded that any of the foregoing additional factors

outweigh the Court's determination that the *Brillhart* factors favor dismissal here.

Instead, the fact that future coverage disputes may arise regarding these parties or

regarding the applicability of property damage exclusions in other Lahaina fire

insurance coverage cases at least raises enough concern that resolving this limited

dispute in federal court will not provide overall clarification for these parties.

Indeed, it is likely that maintaining federal jurisdiction will lead to the unnecessary

entanglement between federal and state courts on an issue of significant state

importance.  When assessing the question presented here, district courts are

"allowed . . . broad discretion as long as it furthers the Declaratory Judgment Act's

purpose of enhancing judicial economy and cooperative federalism." *R.R. St.*, 656

F.3d at 975 (internal quotations and citation omitted).  In its discretion, the Court

concludes that retaining jurisdiction would undermine those purposes—and that

dismissal is warranted.  That Plaintiff will now have to refile this action in state

court (and its dispositive motion with it) is insufficient prejudice to alter the

Court's determination given the other factors at play.  *See* ECF No. 40 at 30.

Based on the foregoing, the Court declines to exercise discretionary jurisdiction, and so GRANTS the AOAO's Motion and DISMISSES this case.

**B.    Remainder of Pending Motions**

Because the Court concludes that it should decline jurisdiction over this matter, the AOAO's alternative request to stay this action is MOOT, and Plaintiff's Motion for Judgment on the Pleadings is also DENIED as MOOT.

## IV.    CONCLUSION

For the reasons stated herein, the Court GRANTS the AOAO's Motion, which Quam has joined, and DISMISSES this action.  Plaintiff's Motion for Judgment on the Pleadings is therefore DENIED as MOOT.

IT IS SO ORDERED.

DATED:      Honolulu, Hawaiʻi, August 29, 2024.



Jill A. Otake
United States District Judge

Civil No. 24-00075 JAO-BMK, *Great American Insurance Company v. Association of the Apartment Owners of Lahaina Residential Condominium, et al.*; ORDER (1) GRANTING DEFENDANT ASSOCIATION OF APARTMENT OWNERS OF LAHAINA RESIDENTIAL CONDOMINIUM'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO STAY THIS PROCEEDING (ECF NO. 35); AND (2) DENYING AS MOOT PLAINTIFF GREAT AMERICAN INSURANCE COMPANY'S RULE 12(C) MOTION FOR JUDGMENT ON THE PLEADINGS (ECF NO. 30)